IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RODNEY LEE BURTON, GF-3363,       )
    Petitioner,                   )
                                  )
    v.                            )   2:10-cv-339
                                  )
FRANKLIN TENNIS et al,            )
    Respondents.                  )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Rodney Lee Burton for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Rodney Lee Burton, an inmate at the State Correctional Institution at Bellefonte has presented a petition for a writ of habeas corpus. In an Order entered on March 24, 2010, the respondent and the District Attorney of Allegheny County, Pennsylvania, where directed to respond and show cause, if any, why the relief sought should not be granted.

Burton is presently serving a life sentence and a consecutive thirty-six to seventy-two month sentence imposed following his conviction, by a jury, of first degree murder, kidnapping, false imprisonment, criminal conspiracy and firearms not to be carried without a license at Nos. CC 200305218 and CC 200306031, in the Court of Common Pleas of Allegheny County. This

1

sentence was imposed on May 18, 2005.¹

An appeal was taken to the Superior Court in which the issue presented was:

1. Did the trial court abuse its discretion when it ruled that the defense could only present evidence that the DNA found on the deceased did not match the defendant if the Commonwealth could present evidence and argue that the defendant could have raped and/or sodomized the deceased notwithstanding the absence of any physical evidence which effectively precluded the defense from presenting evidence that could have raised reasonable doubt as to the defendant's culpability.²

On February 21, 2007, the judgment of sentence was affirmed.³

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the same issue was presented for consideration.⁴ On June 26, 2007, leave to appeal was denied.⁵

On December 5, 2007, petitioner filed a pro se post-conviction petition.⁶ Thereafter, on January 8, 2009, the court concluded that the petition was "patently frivolous and without support on the record" and dismissed it.⁷

An appeal was filed in the Superior Court in which the questions presented were:

I. Whether the lower court erred in finding appellant waived his claim that,

---

¹ See: Petition at ¶¶ 1-7. The record discloses that on May 18, 2005, in addition to the life sentence, the petitioner was sentenced to consecutive sentences of three to six years for kidnapping; twenty to forty years for criminal conspiracy and nine to eighteen months for the firearms violation. (See: Exhibit 8 to the answer of the Commonwealth at p.84).

² See: Exhibit 10 to the answer at p.102.

³ See: Exhibit 12 to the answer.

⁴ See: Exhibit 14 to the answer at p.174.

⁵ See: Exhibit 15 to the answer.

⁶ See: Exhibit 16 to the answer.

⁷ See: Exhibit 19 to the answer.

appellant was denied his constitutional right to effective assistance of trial counsel, under the Sixth Amendment of the United States Constitution, and Article 1, §9 of the Pennsylvania Constitution, in that counsel failed to present a trial defense that Brian Brookins was the perpetrator of the crime concerned?

2. Whether the lower court erred in finding appellant waived his claim that, appellant was denied his constitutional right to effective assistance of trial counsel, under both the Sixth Amendment of the United States Constitution, and Article 1, §9 of the Pennsylvania Constitution, in that counsel failed to object and/or request the trial court to provide an alibi jury instruction regarding the alibi testimony of James Hawkins, that appellant was with him at the time he allegedly confessed his involvement in the crime to Ronald Cohen? [8]

On September 11, 2009, the denial of post-conviction relief was affirmed.[9] Further relief was not sought in the courts of the Commonwealth.

On March 9, 2010, Burton executed the present habeas corpus petition in which he contends he is entitled to relief on the following grounds:

1. Petitioner was denied his Constitutional right to due process of law in the Superior Court of Pennsylvania in that the state court applied an unreasonable determination of the facts, and unreasonable application of clearly established federal law in ruling that petitioner was not denied his Constitutional rights to effective assistance of trial counsel under both the Sixth Amendment of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution, that trial counsel failed to present a trial defense that Brian Brookins was the perpetrator of the crime charged.

2. Petitioner was denied his constitutional right to due process of law in the Superior Court of Pennsylvania in that the state court applied an unreasonable determination of facts, and unreasonable application of clearly established federal law, in ruling that petitioner was not denied his constitutional right to effective assistance of trial counsel under both the Sixth Amendment of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution, in that counsel failed to object and/or request the trial court to provide an alibi jury instruction regarding the alibi testimony of James Hawkins, that petitioner was with him at the time he allegedly confessed his involvement in the crime of

---

[8] See: Exhibit 24 to the answer at p.272.

[9] See: Exhibit 26 to the answer of the Commonwealth.

3

Ronald Cohen.[10]

The background to the prosecution is set forth in the February 21, 2007 Memorandum of the Superior Court quoting the trial court:

> Cindy Pliakas Lang dropped [Victim] off at the home of a friend, Eileen Catania, on the evening of March 22, 2003. It was Eileen Catania's birthday and the two planned to attend a party to celebrate. The original plans did not materialize, so the two went to the home of the [Appellant] to meet another friend, Brittany Williams. Two other men joined the party. The group talked, drank and smoked marijuana. An argument broke out between Brittany Williams and [Victim]. Brittany Williams began to assault [Victim] with her fists, a leather belt and a blue plastic bottle of laundry detergent. [Victim] cried and begged for mercy. At one point in the evening, Williams ordered [Victim] to remove her clothing. When she refused, Williams ripped off [Victim's] top and bra, and continued to assault her. Williams then produced a pistol and threatened to kill [Victim]. A couple from the apartment above came down to ask that the noise cease. They witnessed [Victim] trying to escape, but she was restrained by the [Appellant] and Brittany Williams. After several hours of intermittent assault and abuse, the [Appellant] and Williams told [Victim] they would put her in a jitney and let her go home. They permitted her to dress, escorted her outside and walked about a half mile to the top of the staircase at the bottom of which her nude body was later found. Williams forced [Victim] to strip. [Appellant] shot her in the back of the head and she fell down the stairs. Williams and the [Appellant] returned to the apartment alone. A witness reported that upon his return to the apartment the [Appellant] said he had to get rid of [Victim], because otherwise she might report the incident to the police. The [Appellant] wiped the gun with his shirt and asked one of the men present to dispose of a garbage bag of [Victim's] effects.[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or

---

[10] In ¶ 12 of the petition, Burton sets forth the first issue noted above. He also indicates that he is raising a second issue but his papers are devoid of any indication of that second issue. However, we like the Commonwealth assume that since the petitioner's first issue mirrors the first issue raised in his post-conviction appeal, that he also seeks to raise here as his second issue, that issue as it appears in his post-conviction appeal.

[11] See: Exhibit 12 to the answer at pp. 159-160.

that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

At first blush, it would appear that the issues which the petitioner seeks to raise here were raised in the appellate courts of the Commonwealth and for this reason are appropriately before this Court. However, this is not the case.

Initially, Burton filed a pro se PCRA petition and sought leave to proceed without counsel as was his right.[12] In that petition, Burton alleged he was entitled to relief in that:

A. Defendant was denied his constitutional right to a fair trial, and effective assistance of trial counsel, under both the Sixth Amendment of the United States constitution, and Article 1, § 9 of the Pennsylvania Constitution, in that counsel failed to request removal of juror who stated prior to commencement of evidence that she was "going to fry" defendant.

B. Defendant hereby preserves the right to amend this foregoing PCRA petition, with additional facts and claims, upon obtaining and reviewing pretrial, trial, post-

---

[12] See: Exhibit 16 to the answer.

trial transcripts, and all other court documents.[13]

After providing the petitioner with notice of its intent to dismiss the petition[14] and receiving petitioner's response thereto,[15] on January 8, 2009, the court dismissed the petition as "patently frivolous and without support on the record".[16]

The petitioner then filed his notice of appeal in which for the first time he sought to raise the issues which he seeks to raise here.[17] In reviewing his appeal, the Superior Court observed:

> [T]he PCRA court found Appellant's PCRA petition to be defective, and pursuant to Pa.R.Crim.P. 905(B) ordered him to file an amended petition. Despite receiving a time extension on May 6, 2008, in which to file the amended petition, Appellant failed to comply with the court's order. When the time for filing the amended petition had passed and Appellant had not yet filed an amended petition, the court reviewed the merits of Appellant's original petition, found it to be patently frivolous, and, pursuant to Pa.R.Crim.P. 907(1), notified the parties of its intention to dismiss the petition without a hearing. In reply to the court's notice, Appellant sent an informal response listing the issues he wished to raise and seeking additional time to file an amended petition. Thus, despite being given ample opportunity to do so, *Appellant never pled the claims of ineffective assistance of counsel he now raises on appeal. Accordingly, they are waived.* (Emphasis added)[18]

In addition, the Court found the petitioner's two issues meritless in that petitioner was not convicted of any sex crimes and the alleged alibi defense did not remove the petitioner from the

---

[13] Id.

[14] See: Exhibit 17 to the answer.

[15] See: Exhibit18 to the answer.

[16] See: Exhibit 19 to the answer.

[17] See: Exhibit 14 to the answer.

[18] See. Exhibit 26 to the answer at p.338.

crime scene but rather only called into question the alleged time of his confession.[19]

In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has defaulted the available state court remedies on these issues and no further consideration of these issues is warranted here.

Nevertheless, because the Superior Court also examined at the merits of the issues which the petition raised, we too will do so.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a

---

[19] Id. at pp.339-340.

habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

The evidence regarding Brian Brookins arose from the fact that his DNA profile "matched the DNA profile obtained from the sperm fractions of the vaginal swabbing and the swabbing from the outer vaginal area [of the homicide victim]." As the Superior Court observed, and as we too note, the petitioner was charged with homicide and related crimes and not a sexual assault crime. Thus, the presence of Brookins DNA on the victim was immaterial and counsel cannot be faulted for not raising a meritless defense. Thus, this claim does not provide a basis for relief.

The petitioner's second allegation here is that counsel was deficient for failing to request a alibi instruction based on the testimony of of James Hawkins that the petitioner was with him at the time he supposedly confessed his involvement to another individual, Commonwealth witness Ronald Cohen. That is, as the Superior Court noted:

> The contention is that James Hawkins' trial testimony established Appellant's inability to have confessed committing the crime at the time another witness claimed that he did ... Contrary to his contention, Hawkins' testimony does not warrant an alibi jury instruction because it did not remove Appellant from the scene of the crime [as required under Pennsylvania law to establish an alibi

9

defense]; it merely highlighted an inconsistency as to when Appellant admitted to the witness that he had committed the offense.[20]

Thus, this claim fails to demonstrate that counsel's representation was defective.

In summary, there is no demonstration of any unreasonable application of federal law, and accordingly, because the petitioner is barred from raising the claims he seeks to raise here on grounds of procedural default, and additionally, because the claims themselves are meritless, it is recommended that the petition of Rodney Lee Burton for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within fourteen (14) days after being served, any party may serve and file written objections to the Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: May 19, 2010                      United States Magistrate Judge

---

[20] See: Exhibit 28 at pp. 339-340, citing Comm. v. Johnson, 966 A.2d 523, 538 n.5 (Pa.2009). At the trial, Hawkins, who is the petitioner's uncle testified that on March 22, 2003, he picked the petitioner up to go to work at about 6:00 a.m. and left him off at a bus stop after work at about 4:30 p.m. The next day, he also picked him up to go to work at about 6:00 a.m. and dropped him at petitioner's home after they left work at 12:20 p.m. (TT.398-417). Ronald Cohen who was petitioner's upstairs neighbor testified that on March 22, 2003, his sleep was disturbed by loud music from petitioner's apartment; that petitioner turned down the music; that the next morning he meet the petitioner coming from the laundry room between 5:30 and 5:45 a.m.; that petitioner related to him that there had been a sexual assault on the victim and the petitioner showed him the location where he had shot the victim in the head, and they returned to the petitioner's apartment at about 6:45 a.m.(TT.227-251). Thus, at best an evidentiary conflict existed the resolution of which falls within the jury's providence.